HENRY HEPBURN, PROSECUTOR, v. THE MAYOR AND
ALDERMEN OF JERSEY CITY ET AL.

Argued November 11, 1901—Decided November 29, 1901.

The act approved April 1st, 1895 (*Pamph. L., p.* 769), authorizes cities
to take by condemnation, in procuring a public water-supply,
"land, water, water rights or other property." Under this power a
temporary use or interest in land may be so taken.

On *certiorari* bringing up an order of a justice of the Supreme Court appointing commissioners to condemn land.

Before Justices Van Syckel, Fort and Garretson.

For the prosecutor, *Halsey M. Barrett.*

For the defendants, *William D. Edwards.*

The opinion of the court was delivered by

Fort, J.   This writ brings up an order appointing commissioners in condemnation proceedings under the statute.
*Pamph. L.* 1900, *p.* 79.

Jersey City possesses power to condemn for a water-supply under an act approved April 1st, 1895, which provides that when the proper board or other municipal authority of any city shall deem it proper to acquire land, water, water rights or other property within or without said city for the purpose of supplying said city with water, and cannot agree with the owner as to the price, they may apply to condemn the same. The thing which may be condemned, therefore, is "land, water, water rights or other property." *Pamph. L., p.* 769.

The order brought up in this case was made necessary on the part of Jersey City in prosecuting the public work of procuring a public water-supply for that city.   Objection is made to so much of the order as permits the condemnation of a temporary use of twenty feet of land, upon either side

of a strip of land forty feet in width, which, by the order, is to be condemned absolutely for the purposes of the city.

The language of the order called in question is this: "Also to use and occupy until June 1st, 1901, in the construction of its conduit and pipe lines, a strip of land twenty feet wide on each side of the above-described land for the full length thereof."

It is contended that the language of the act of April 1st, 1895, does not confer authority to take a temporary use or interest in land by condemnation.

This is a municipal public work and if the power is found in the statute it should be upheld. Why should a municipal corporation engaged in a public work be required to take any interest or estate in land beyond that required for the purpose contemplated? Is it not, in fact, the correct rule that it should not be permitted to take any interest beyond that necessary? The act of 1895 authorizes the municipality to condemn "land." Does that contemplate the taking of the fee, or an exclusive, permanent use only?

The case of *Hibernia Railroad Co.* v. *De Camp*, 18 *Vroom* 518, is relied upon to sustain this contention. The facts in that case, however, were different. The character of the right or interest there condemned was not a definite one. That was an attempt to condemn a sort of shifting use—a use, the damages resulting from which were not capable of definite ascertainment. Neither the time of the use, the character of the excavation or construction to be made, nor when changes might ultimately be required by the company were certain or capable of such ascertainment as would form a fair basis for the calculation of damages by the commissioners.

In the case before us the interest or use to be taken is definite. It is "the right to use and occupy until June 1st, 1901." The damages arising from such a deprivation of land, and those incident to it, from the use proposed to be made of it, are easily ascertainable. They must, of course, be fixed upon the basis of the greatest possible injury to the land for the time it is to be occupied, and the use to be made of it while it remains in the possession of the city.

Other courts have upheld a temporary use where cities have been seeking condemnation of land in the construction of a water-supply.

In obtaining its water-supply, the statute gave to the city of New York the right to condemn lands in fee for its purposes. Under this act it undertook to condemn a temporary use in land, off its proposed pipe-line route, to set up its machinery during the time of the construction of said line, and the Appellate Division of the Supreme Court held that such a condemnation of a temporary use was within the statute, where the right to take a fee was given. *Matter of Thompson,* 57 *Hun* 419.

The right to take land by purchase or otherwise does not involve the obligation to take the whole interest in land purchased or otherwise taken. No more land and no greater interest in it need be taken than the public use requires. *Tyler* v. *Hudson,* 147 *Mass.* 609, 612.

The rule is stated in the *American and English Encyclopedia of Law* in this way: "When, in the course of construction of a public work, it is necessary to occupy temporarily adjoining lands, such occupation may be authorized; the owner is entitled to compensation for the length of time that the land is used and the damage done." 10 *Am. & Eng. Encycl. L.* 1131.

The leading case in this country is one decided by Chancellor Kent in 1823, arising out of the condemnation of a temporary use or interest in land during the construction of one of the New York state canals. In speaking of the taking of a temporary use in such a case, that learned jurist said:

"I cannot perceive any room for doubts as to the power of the commissioners to enter upon and use the ledge of rock in question for the purposes of making the dam. There is no avoiding this conclusion unless we maintain the construction that the act only intended that the commissioners might enter, use and take possession of land for permanent appropriation of the whole fee of the land, and not for temporary use. According to this construction, if they wanted room adjoining the canal for a temporary deposit of material for locks or

dams, or a right of way or passage to the canal, or the materials of stone, gravel, clay, &c., from the adjoining lands, they could not use them without at the same time appropriating the fee of the land. But why should the commissioners be obliged to appropriate a greater interest in the adjoining land than is requisite for the public object? And what possible objection can there be to the construction, allowing them to make as much use of the adjoining grounds as should be necessary for the prosecution of the improvements and no more?

"Statutes made for the public good and for general and beneficent purposes are to receive a very liberal construction, and be expounded in such a manner as that they may, as far as possible, attain the end. There was no need that the fee of lands, used only for a temporary purpose, should be vested in the public. If the owner is paid for the damage occasioned by the temporary use of his lands, it is all he can justly require." *Jerome* v. *Ross, 7 Johns. Ch.* 315.

In this case, the order made by the Supreme Court justice was within the statute, and is affirmed, with costs.