## J. P. BRADY et al. vs. ROAD DIRECTORS FOR ALLEGANY COUNTY.

*Condemnation Proceeding—For Highway Purposes—Review on Appeal—County Road Directors—Corporate Powers.*

Code 1924, art. 23, secs. 331-337, providing for the condemnation of land by means of a sheriff's jury, were, as regards the opening and closing of highways, not repealed by Code, art. 33A, and a proceeding to condemn land for an approach to a bridge, a part of the county road system, is properly brought thereunder.                                    pp. 499, 500

Code 1924, art. 23, secs. 331-337, providing for condemnation proceedings before a sheriff's jury, being still in force as regards the opening or closing of a highway, the determination of the trial court, in ratifying the inquisition of the jury, as to the necessity of condemnation, inability to agree with the

land owner, the regularity of the conduct of the sheriff and the jury, and the sufficiency of the description in the petition of the interests of the landowners, is final and not reviewable by appeal.         pp. 498, 499

The Road Directors of Allegany County has no power of eminent domain, except as the Legislature has directly or by necessary implication conferred such power, and the manner of procedure provided in the enabling act must be strictly followed.         p. 501

Act of 1904, ch. 262, sec. 216K, confers upon the Road Directors of Allegany County, incorporated by that act, the power, whenever in its judgment the public safety, convenience or welfare require it, to condemn land for a new road without the filing of a formal application and the procedure incident thereto.         p. 503

The Road Directors of Allegany County having the right to acquire land by condemnation for highway purposes upon compliance with the conditions prescribed by the statute, the question whether it has complied with those conditions is a question which, while jurisdictional in character, is peculiarly within the province of the trial court to decide upon exceptions to the inquisition, and is not a subject for review by the Court of Appeals.         pp. 503-505

The Road Directors of Allegany County has authority to condemn land for highway purposes, although it lies in an incorporated town.         pp. 505-507

The corporation having authority to build and maintain a bridge as part of the county highway system, it has power to maintain a temporary bridge while a permanent bridge is under construction, and to acquire by condemnation or otherwise land necessary to afford access thereto.         p. 507

A municipal corporation, having power to condemn land, may condemn a mere temporary use therein.         p. 507

*Decided June 11th, 1925.*

Appeal from the Circuit Court for Allegany County (DOUB, J.).

Condemnation proceeding by the Road Directors for Alle-
gany County against J. P. Brady and Annie Brady, his
wife. From an order overruling exceptions to the inquisi-
tion, and ratifying the latter, defendants appeal. Appeal
dismissed.

The cause was argued before BOND, C. J., URNER, ADKINS,
OFFUTT, PARKE, and WALSH, JJ.

*Taylor Morrison*, with whom was *A. Taylor Smith* on the
brief, for the appellants.

*Horace P. Whitworth*, with whom was *Lloyd Lowndes* on
the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Some time prior to November 26th, 1924, a bridge over
the Potomac River, connecting Main Street in Westernport,
Maryland, with Ashfield Street in Piedmont, West Virginia,
was destroyed by flood. It had been constructed and main-
tained jointly for many years by the Road Directors of Alle-
gany County and the County Court of Mineral County, West
Virginia, and when it was washed away they constructed,
nearby, a temporary bridge to take its place pending the
completion of a new permanent bridge. The temporary
bridge was placed in a different location from the old one in
order to have the clearance necessary for the construction of
the new permanent bridge. To afford the travelling public
convenient access to the temporary bridge it became neces-
sary to cross a lot sixty feet in depth belonging to the appel-
lants, which separated it from Main Street. The Road Di-
rectors thereupon contracted with the appellants for the use
of that lot of ground free of charge for a period of six
months. At the expiration of that period the permanent
bridge was still uncompleted, and it then appeared that it
would probably require an additional twelve months to fin-
ish it, and the appellee applied to the appellants for an ex-
tension of the privilege of using the lot for an additional

period of twelve months for a valuable consideration, but they refused to rent, lease or otherwise contract with the appellee for the use of the same. In that situation the appellee applied to the Circuit Court for Allegany County for a warrant directed to the sheriff of that county directing him to summon a jury to assess the damages which the appellants would sustain by the use of the said lot as a highway for the period of twelve months. On that application the court signed a *nisi* order, and the respondents by way of cause filed an answer in which they denied that the court had jurisdiction to issue the warrant prayed for, and alleged that the petitioner had no power or authority to condemn the land or any interest in it. A hearing was had and testimony taken in connection with the issues made by these pleadings and at its conclusion the court issued the warrant. A jury was summoned and sworn and its inquisition returned. Exceptions were filed to that inquisition, but the court overruled the exceptions and ratified the inquisition, and from that order the respondents appealed.

The facts essential to a consideration of the questions presented by the appeal, in addition to those already referred to may be thus stated: Westernport was incorporated by chapter 40 of the Acts of 1868. The Road Directors of Allegany County were incorporated by chapter 262 of the Acts of 1904. The County Commissioners of Allegany County were authorized by chapter 103 of the Acts of 1868 "to levy such sum or sums of money as they deem necessary in their judgment, to aid in the construction of a bridge across the Potomac River at Westernport, in Allegany County, Maryland."

The County Commissioners of Allegany County, in conjunction with the County Court of Mineral County, West Virginia, did construct the bridge referred to in that act and have since maintained it, renewing and repairing it from time to time as was necessary.

Before this proceeding it was destroyed by flood, and the appellee, in conjunction with the County Court of Mineral

County, West Virginia, made plans for its reconstruction and had let contracts for a part of the construction work. On the 18th day of April, 1924, the appellee contracted with the appellants for the use of their lot, which was needed as a public way or approach to the temporary bridge. Under the contract the right to so use it for six months was granted to the appellee, and no charge was made for the use during that period, and the appellants agreed to renew the contract upon application by the appellee within the period of six months. No such application was made and the appellants then began to collect toll from persons crossing their land in going to and from the bridge. After the six months had expired the appellee, being of the opinion that the construction of the new bridge would not be completed within twelve months from that time, applied to the appellants for the use of the ground for a valuable consideration for that period, but was unable to reach an agreement with them as to such use. Thereupon the appellee by its attorneys filed the petition referred to above, supported by the affidavit of its chairman, for the condemnation of the land as a way or approach to the bridge for twelve months, and the subsequent proceedings resulted in the condemnation of the property and the award of damages to the owners for such use.

We have treated these facts as uncontradicted, for while the appellants denied that the temporary bridge had been constructed or paid for by the appellee, and denied that the use of the land was necessary to the public convenience, and denied that the appellee had been unable to agree with the owners, if the court had jurisdiction to entertain the application at all, they are concluded by the finding of the jury and the subsequent ratification of the inquisition upon those facts.

The appellants objected to the ratification of the inquisition for reasons which may be thus summarized, that is to say: (1) because all acts of the appellee in connection with the permanent and the temporary bridge were *ultra vires* and therefore void; (2) that there was no duty resting upon

the appellee to condemn the land; (3) that the appellee had no power to condemn land for the purpose set forth in the petition within the corporate limits of Westernport; (4) that the petitioner had never by any valid corporate act decided that it was necessary to condemn the land; (5) that the petition showed on its face that the appellee had never been requested to open a public road over the land in question, and that no notice had been given nor had any hearings in reference thereto been held; (6) that the proceedings show on their face that the public had adequate means of communication between Westernport and Piedmont; (7) that the jury had no opportunity of finding for the appellants because the form given them by the sheriff made no provision for a verdict in their favor; (8) that it did not appear on the face of the proceedings which of the appellants owned the land, and (9) that the statutes under which these proceedings had been held were repealed by "article 33A of the Code of Public General Laws of Maryland."

Although we have stated them all, it is unnecessary for us to consider any of these objections except those which deny that the trial court had jurisdiction of the subject matter of the proceedings, and those which assert that the statutes under which this proceeding was instituted have been repealed, for if that court had jurisdiction of the subject matter, and if those statutes are unrepealed and this proceeding was properly instituted under them, its determination is final, and cannot be reviewed on appeal to this court. The reasons for that rule and the cases exemplifying its application have been so exhaustively treated in an opinion filed in this Court by Judge Pearce in *Dolfield v. Western Maryland R. R. Co.,* 107 Md. 584, that the citation of further authority seems unwarranted.

If the appellee had the right to acquire land for the purpose set out in its petition and if sections 331 to 337, article 23, C. P. G. L. of Md. are still in force, and this proceeding is properly instituted under the authority thereof, then whether the appellee had by valid corporate act decided that

it was necessary to condemn the land, or whether it had attempted and failed to agree with the landowner as to its use and the proper compensation therefor, or whether public convenience required its condemnation, or whether there were irregularities in the conduct of the sheriff or the jury, or whether the interests of the several owners in the property were properly described in the petition, were all matters for the consideration of the trial court sitting in the exercise of a special statutory jurisdiction at the trial of the exceptions to the ratification of the inquisition, and from its judgment upon them no appeal lies to this Court. *Dolfield v. Western Maryland R. R. Co., supra.*

The important question presented by the appeal, therefore, is whether the court had jurisdiction of the subject matter of this proceeding, or stated in another way, whether the appellee had any power to condemn the land described in the petition for the purpose therein stated, but before considering that question we will first deal with the contention that this proceeding, if it can be maintained at all, should have been instituted under article 33A of the Code of Public General Laws of Maryland, and not under sections 331-337, article 23, Bagby's Code 1924. But in view of what was said in *Koehler v. State Roads Commission,* 125 Md. 444, it is obvious (1) that those sections have never been repealed, and (2) that this proceeding was properly instituted under the authority thereof, if the appellee had the power to condemn at all. In that case, as in this, land was sought to be condemned for highway purposes, and in that case as in this the proceedings were brought under the sections of article 23 to which we have just referred, the only material difference between the cases being that in that case the land was sought for use as part of a state highway, while in this it is sought for use in connection with the county road system of Allegany County. And what was said by Judge Briscoe speaking for this Court therein is quite as applicable here. In dealing with that question he said: "It is clear that the object of the Act of 1912 was to provide condemnation pro-

ceedings before a jury in court instead of before a sheriff's jury, in all cases, except those otherwise stated by the act itself. This is made plain and manifest not only by the title of the act, but by section 7 of the act, which is as follows: 'The state, and any municipal or other corporation, commission, board, body or person, which under the laws of this State, has the right to acquire property by condemnation, shall acquire such property, if condemnation proceedings be resorted to, in pursuance of, and under the provisions of, this article, anything in any other public general law or public local law or private or special statute to the contrary notwithstanding; provided, however, that nothing in this article contained shall apply to or change the present law or procedure for the opening, closing, widening or straightening of highways.' The proviso in the seventh section above cited specially provides that nothing in the article should apply or change the present law or procedure for the opening, closing widening or straightening of highways. It is difficult to understand how any serious contention can be made, in view of this proviso, that the law and procedure, then in force (Acts of 1908, chapter 141, and Acts of 1910, chapter 501), relating to highways, were in any way intended to be repealed or to be affected by the act which excepted them from its operation."

The appellants, however, contend that the Road Directors of Allegany County had no power or authority to condemn the land in question under this proceeding, (1) because it had no right to open, close, alter, or relocate a road except upon petition and notice in the manner provided in chapter 262, Acts of 1904, (2) that it had not the power to condemn land within the corporate limits of Westernport, (3) because it had no power or authority to condemn a temporary use in land and (4) because it had no power or authority to construct or maintain the temporary or the permanent bridge.

Before considering separately these objections, we will restate briefly the situation of the appellee and the citizens of Westernport and Allegany County at the time these pro-

ceedings were initiated.  The two towns, Westernport in Maryland, and Piedmont in West Virginia, are separated by the Potomac River.  The only safe and convenient means of communication between them for many years has been over a bridge constructed for their common convenience by the joint action of Mineral County, West Virginia, in which Piedmont is located, and the Road Directors of Allegany County.  Commerce between the two towns had in course of time led to a considerable volume of travel over this bridge by the citizens of the two states.  As a result of flood the bridge was destroyed and the only safe and convenient avenue of communication between the two states at that point became impassable.  To serve the public convenience the appellee constructed a temporary bridge to care for the travel during the reconstruction of the old bridge, but access to that temporary bridge could only be had over private property. The owners of that property, after having allowed the use of it for that purpose for a period of six months, after the expiration thereof refused to permit it to be used any longer as an approach to the bridge except upon the payment of toll by such persons as had occasion to use the bridge.

It is apparent from this statement that while the appellee proposed to open a new road, it was not such a road as would render it expedient or proper for it to pursue the procedure provided in that part of section 216K of the Act of 1904 which requires the appointment of examiners, the filing of petitions, hearings, appeals etc. which might not be concluded until long after the need for the temporary use had ceased.  But at the same time it is well settled that the appellee has no power of eminent domain unless the Legislature has directly or by necessary implication conferred that power upon it, and that in such a case the manner of procedure provided in the enabling act must be strictly followed.  *Lewis on Eminent Domain,* sec. 240 *et seq.*  It is, however, contended that the concluding clause of section 216K authorizes the appellee to condemn lands needed for public roads under the provisions of sections 331-337, article 23, Bagby's

Code, and that is the view taken by the trial court. It may be said that the language of that section is by no means clear, but bearing in mind the duties imposed upon the appellee by statute in respect to the roads and highways under its control and supervision, and the powers necessary to any adequate discharge of that duty, there is much force in that contention. The portions of that act germane to the question are as follows:

"All applications for opening, altering or closing roads shall be by petition to the Road Directors, and whenever any person or persons shall intend to petition said directors for opening, altering or closing any road, he or they shall give twenty days' notice thereof in one or more newspapers published in Allegany County, setting forth as near as may be the length and location of said road and the reason he or they have for opening, altering or closing the same; and counter petitions may be presented to the Road Directors at any time within fifteen days after the expiration of the twenty days' notice above provided for; and when any petitions are so presented, the said Road Directors shall appoint a day when the petitioners and counter petitioners shall be heard, and shall consider the same and such testimony as may be adduced before them, and shall determine the case in such manner as in their opinion shall be right and proper. Whenever the Road Directors decide it is expedient that a road be opened under the provisions of this section, they may contract with the owner or owners of the land through which the road is intended to be run for the right of way necessary for such roads. * * * and whenever the Road Directors shall deem it expedient that examiners should be appointed to view grounds for the purpose of opening, altering or closing a road, they shall appoint three persons as examiners, * * * but the appointment of the examiners shall not prevent the Road Directors from contracting with the owner or owners as above provided; or said Road Directors may proceed to condemn the lands that may be necessary for the laying out of new public roads

> or for altering of existing roads under the provisions
> of sections 248 to 253, both inclusive, of article 23 of
> the Code of Public General Laws, title 'Corporations,'
> and any and all amendments thereto."

It might be said that these provisions mean that, after the
filing of petitions, a hearing etc. and after having deter-
mined that the public convenience required the opening of
a new road, the appellee could either appoint examiners, or
acquire the land by contract, or condemn it. But we think
a more reasonable construction, and one more in harmony
with the general powers and duties of the appellee, is that it
was intended to confer upon the appellee, whenever in its
judgment the public safety, convenience or welfare required
it, the power to condemn land for a new road without requir-
ing the filing of a formal application and the long drawn
out procedure incident thereto.

But in view of what was said by this Court in *Cumber-
land & P. R. R. v. Penna. R. R.,* 57 Md. 267, and in other
cases decided both before and after that case, we do not feel
that this question is before us on this appeal. The subject
matter of the proceeding was the condemnation of land for
highway purposes. The appellee had undoubtedly the right
to acquire land by condemnation for such purposes upon
compliance with the conditions prescribed by the statute.
Whether it had fully complied with those conditions was a
question which, while jurisdictional in character, was yet
one peculiarly within the province of the trial court to de-
cide, upon exceptions to the inquisition. And what was said
in the case last cited appears to conclusively negative our
right to review its decision thereon. In that case the Court
said: "The injunction in each case was refused by the
learned judge of the circuit court, on the ground that the
jurisdiction to determine the matters in controversy, was in
the circuit court sitting in review of the condemnation pro-
ceedings; and in his opinion, refusing the injunction we
fully concur. Not only were the alleged grounds of objec-

tion open to the complainant by way of objection to the con-
firmation of the inquisition at the time of filing the first bill;
but the said company did actually go into the said court,
and made objections to the confirmation of the inquisition;
and if it did not make all the objections, jurisdictional or
otherwise, that could be made to the confirmation, it was its
own fault, and it cannot complain if there was any omission;
and if its objections did not receive due consideration by
that court, or were erroneously decided, it is still bound by
the decision; and we can see no reason why it should have
another trial of the same questions, by the same court, sit-
ting in another capacity, and having no more ample power
or authority to decide the questions involved, while sitting in
the one capacity than in the other."

And in *New York Mining Company v. Midland Co.,* 99
Md. 506, where the exceptant objected to the ratification of
an inquisition on the ground that the property was not con-
demned for a public use, that there was no necessity for the
condemnation, and that the warrant directing the sheriff to
summon a jury was not issued in conformity with law, it was
said: "Whatever subject-matter involved in the controversy,
the court below had the right to decide was necessarily a
subject-matter within the jurisdiction of that tribunal. Ac-
cordingly the inquiry here is, not whether the trial court
rightly decided but whether it had the right to decide, what
it did decide. If it had the right to decide what it did de-
cide then, though its decision be, in point of fact or of law,
erroneous it cannot be reviewed, because the statute has con-
ferred no power upon this Court to sit in review of such a
judgment. So the ultimate question is, were the things com-
plained of and decided below, things which the court had
jurisdiction to decide? * * * As each and all of the excep-
tions to the ratification of the inquisition and the reasons
assigned as grounds of error embrace and comprise matters
which, in the last analysis, relate merely to the correctness
of the circuit court's judgment, and in no way concern or
affect its jurisdiction over the subject-matter and the parties

then before it, and it is obvious, upon well settled principles, that neither an appeal nor a writ of error will lie to review the judgment complained of."

And again in *Dolfield v. Western Md. R. Co., supra*, in referring to a statement in *Hopkins v. P., W. & B. R. R. Co.*, 94 Md. 257, the Court used this language: "But in that case, the court used the following significant language: 'The only ground upon which the present appeal can be maintained is that the appellee had *no right at all* to make the condemnation complained of, and for that reason the circuit court had exceeded its jurisdiction in confirming the inquisition. If such be the case the decisions support the right of appeal. *George's Creek Coal & Iron Co. v. New Cent. Coal Co.*, 40 Md. 425; *B. & O. v. Waltemeyer*, 47 Md. 331; *Herzberg v. Adams*, 39 Md. 312.' The cases thus referred to merely show and were merely intended to show, that an appeal lies where the lower court had no jurisdiction over the subject matter, and therefore no right to render any judgment upon the merits."

In this case, assuming that the appellee could not condemn except upon application or petition, and after notice and a hearing, nevertheless whether those steps had been taken was a question which the trial court had the right to decide, and having the power to decide them its decision in respect to them is final.

The contention that the lower court had not jurisdiction of the subject-matter of this proceeding also involves, as we have said above, these propositions: (1) that the appellee had no authority to condemn land in the town of Westernport, (2) that it had no power to condemn a mere temporary use of property, (3) that it had no power to build either the permanent or temporary bridge, or any way or approach in connection therewith.

The first and third propositions appear to have been answered by the case of *Allegany County v. Seaber*, 123 Md. 527. In that case the defendant sought to escape liability for injuries resulting from the unsafe condition of the bridge

under consideration here, on the ground that the Road Directors of Allegany County, under section 2 of article 25, Bagby's Code 1924, had no control over the roads, streets and alleys in incorporated towns, even though situated within Allegany County, but in dealing with that question this Court, through Judge Urner, said: "There is no such exception, however, in the separate provision, by section 13, that 'they may build and repair bridges and levy upon the property of the county therefor.' These sections were all in effect when the road directors were incorporated and invested with powers co-extensive with those of the County Commissioners with respect to public roads and bridges, and they have continued to be operative to the present time. * * * The bridge upon which the accident occurred, though located within the limits of Westernport, was built upon soil which formed part of the territory of the county, and the public interests which required its construction were obviously much broader than the local convenience of the citizens of the municipality. It was not established as a means of passage over a stream which divided the area of the town and impeded the association of its people, but it was erected over a river which marks the boundary between Maryland and a sister state, and it was undoubtedly designed to facilitate intercourse between the larger communities on either side of the river in which the two towns at the termini of the bridge are included. The County Commissioners of Allegany County, and co-extensively the road directors of the county, were given express and comprehensive authority to build and repair bridges. In the absence of any qualification of this power in the section by which it was conferred, as to its exercise within municipal areas, it could not properly be held that the county is without interest or responsibility with respect to this interstate bridge which it has constructed and maintained, under the special arrangement described, with funds to which its taxpayers generally have contributed."

It was expressly decided in that case that the appellee was validly authorized by chapter 103 of the Acts of 1868 to

build the bridge and to maintain it, and that it was charged with the duty of keeping it in safe condition for public use. For the conclusion in that case necessarily assumed that in building and maintaining the permanent bridge the appellee acted within its statutory powers. And if it had the authority to construct, or to join with Mineral County in constructing, the permanent bridge and to maintain it as a necessary incident of that power, it must also have had the power to do such things as were reasonably necessary to prevent or lessen inconvenience to the public which might result from any interruption of the use of that bridge, and in our opinion the power to maintain the temporary bridge while the permanent bridge is under construction and to acquire by condemnation or otherwise land necessary to afford access thereto is fairly implied from the authority to build and maintain the permanent bridge.

The remaining objection to the jurisdiction is that the appellee had no power to condemn a mere temporary use of the land. No authority has been cited in support of that proposition and what authority we have found is the other way. *Dillon, Mun. Corp.* (5th ed.), par. 1025, note 2; *Hepburn v. Jersey City,* 67 N. J. L. 114; *Lewis, Em. Dom.,* par. 278.

Since therefore the appellee had the power to condemn the land in question, the Circuit Court for Allegany County had jurisdiction of the subject-matter of this proceeding, and from its judgment given in the exercise of that jurisdiction no appeal lies, and it follows that the appeal taken in this case must be dismissed.

*Appeal dismissed, with costs.*