STATE OF INDIANA *v.* CURTIS.

[No. 29,955. Filed March 29, 1961.]

*Edwin K. Steers,* Attorney General, *Richard M. Givan,* Assistant Attorney General, and *Joe T. Adkins,* Deputy Attorney General, for appellant.

*John A. Kendall,* of Danville, and *Rochford & Blackwell,* of Indianapolis, for appellee.

ARTERBURN, J.—This is an appeal from the granting of an injunction against the State (Highway Department), prohibiting the removal or destruction of certain buildings and improvements on land sought to be taken for highway purposes in a condemnation action against the appellee-owner, Etta W. Curtis.

We gather from the facts presented that the State brought a condemnation action against the appellee-owner of certain farm land for the purpose of constructing a state highway. The complaint for that purpose described a portion thereof as "permanent right-of-way" and another portion as "temporary right-of-way." In addition it appears that the exact metes and bounds or description of part of the property taken was not tied down sufficiently so that it could be determined whether or not the line between the "temporary" right-of-way and the permanent right-of-way ran through certain buildings and improvements on the appellee-owner's property.

There is no dispute, however, that there is a house, barn or shed, a crib, a garage, a well and some waterworks apparatus that are located on what is designated as a "temporary right-of-way." The evidence shows that the State had advertised for sale the garage, the barn and the house located on the "temporary right-of-way." Appellee, seeking to prevent the State from selling or disposing of the buildings in question, filed her petition for an injunction on the date set for the sale of the buildings.

Under Burns' §3-1707, which states: ". . . the court may make such further orders, and render such finding and judgment as may seem just" in a condemnation proceeding, the court had authority under the petition for an injunction filed in the same

proceeding to resolve this difficulty.[1] *State* v. *Marion Circuit Court* (1959), 239 Ind. 327, 157 N. E. 2d 481.

The court's permanent injunction which is before us on this appeal enjoins the State "from selling or disposing of any buildings located on the real estate of the defendant" except "that portion of said real estate which has heretofore been condemned by plaintiff as a *permanent* right-of-way for highway purposes." (Our italics.) In other words, the State is enjoined from selling or disturbing the buildings upon the so-called "temporary right-of-way."

The appellee-Curtis had the burden of proving ownership of the land and the right to the possession of the improvements and property over which there is now a controversy. After appellee's proof of ownership in fee-simple, it was incumbent upon the State to show what right it had to sell or dispose of the improvements upon the land of the appellee-owner. The only right the State had was by virtue of the condemnation judgment and order entered. The description of the land and interest taken is the same in this judgment as that described in the complaint. That portion with which we are concerned is merely designated as a "temporary right-of-way." There is no description as to how "temporary" either as to time or purpose, the use is to be. The State, in argument, contends that the temporary right-of-way was to be used only during construction and for the purpose of removing the buildings thereon, yet there is no such authority or limitation included in the judgment relied upon by the State in that or any particular. A matter involving rights in real estate cannot be left

---

1. This is not a collateral attack by injunction in a separate suit and should be distinguished from the cases cited in the dissent, including *Shedd* v. *Northern Ind. Pub. Serv. Co.* (1932), 98 Ind. App. 42, 182 N. E. 278.

in such uncertainty. Under the facts presented, the State has failed to prove any right under the mere description "temporary right-of-way" to sell, take and destroy any of the improvements on the appellee's property in the area designated merely as "temporary right-of-way." We do not know what is meant by such an indefinite term, and we do not think it should be left to the judgment of whomever might be in charge of the Highway Department. A "temporary right-of-way" cannot be construed as a "permanent right-of-way" for the reason that the terms are contradictory in meaning. "Temporary . . . opposite of permanent." Black's Law Dictionary (Fourth Ed.)

> So far as real property law is concerned, a tenant holding under a "temporary" right even to the extent of a life tenant, may not remove or destroy permanent improvements.

It is argued that the court-appointed appraisers took into consideration the damage to the buildings located on the line of the permanent right-of-way and that the remedy of the land owner is through exceptions filed to the damages awarded and not by way of injunction. We point out that what the appraisers "thought" were the legal rights between the State and the land owner with reference to the removal of improvements on the "temporary right-of-way" has no binding force or effect. If the land owners were left to follow such procedure, it would be possible that the appraisers would assume that the buildings were not to be touched or removed, while at the same time the State would proceed, nevertheless, to sell the buildings and authorize third parties to remove them, as in this case. In such a situation there would be no adequate remedy other than by injunction. The description as to what the rights of the State are in the "temporary right-of-way"

is indefinite and uncertain and fixes no standard or measure upon which appraisers may determine with any certainty the amount of damage.

In *Southern Indiana Gas and Electric Co.* v. *Gerhardt* (1961), 241 Ind. 389, 172 N. E. 2d 204, we recently held that a witness appraising the damages in a condemnation action may be cross-examined as to his knowledge of the rights between the land owner and the condemnor in order to determine the basis upon which he fixed his estimate of damages. If his understanding is erroneous, it has been held his testimony may be stricken out. How can it be said in this case that such a witness or appraiser can estimate the damages to property under such an indefinite term as "temporary right-of-way" with no further description as to its limitations or what is to be done thereon?

The Eminent Domain Statute (Burns' §3-1702) provides that the complaint must contain "a specific description" of the land sought to be taken and "the use plaintiff intends to make of the property or right." Under that requirement we feel the State has failed in its complaint and as a result, in the judgment of condemnation entered, to state the specific interest and use to be made of the so-called "temporary right-of-way." It is conceded that the highway, as constructed, will only utilize the "permanent right-of-way" as described. The use of the so-called "temporary right-of-way" is left vague and uncertain. The trial court had the right to conclude that the State had no right to sell or disturb the improvements on the so-called "temporary right-of-way," under the order and judgment of condemnation in the absence of any expressed provision therein. *Hire* v. *Kniseley et al.* (1891), 130 Ind. 295, 29 N. E. 1132; 11 I. L. E., Eminent Domain, §136, p. 718.

We find no error in the judgment of the trial court in issuing the injunction enjoining the appellant from selling or disposing in any manner of the buildings and improvements located upon appellee's land except that portion which has been condemned as a permanent right-of-way for highway purposes.

The judgment is affirmed.

Landis and Achor, JJ., concur.

Jackson, J., concurs in result.

Bobbitt, C. J., dissents with opinion.

### DISSENTING OPINION

BOBBITT, C. J.—I dissent from the majority opinion herein and because it appears to me to be so manifestly in error, I feel impelled to state my reasons for disagreeing.

*First:* The action herein was originally commenced by appellant to condemn a part of appellee's land for highway purposes. Appellee, pursuant to Acts 1905, ch. 48, §5, p. 59, being §3-1705, Burns' 1946 Replacement, filed objections to the proceedings. These objections were overruled on October 9, 1959, and the same day the court, pursuant to Acts 1905, ch. 48, §4, p. 59, being §3-1704, Burns' 1946 Replacement, appointed appraisers to assess damages and benefits, if any, which appellee might sustain by reason of the location of the proposed highway.

On November 4, 1959, the appraisers filed their report which showed damages assessed as follows:

1. The value of land appropriated _____$12,750
2. The value of improvements on land taken _____ 18,500
3. Damages to residue because of land and building appropriated _____ 18,750

Total damages _____$50,000.

On November 10, 1959, appellant filed exceptions to the appraisers' report, and on November 13, 1959, appellee filed her exceptions to the appraisers' report. Subsequently, on December 28, 1959, while the exceptions were still pending, appellee filed her petition for an injunction seeking to prevent the State from selling or otherwise making disposition of the buildings located on part of the land sought to be appropriated and for which damages had been allowed in the appraisers' report.

From an order granting such injunction this appeal is prosecuted.

A part of appellee's house and a shed are located on land which the State seeks to appropriate for permanent right-of-way. However, in order that these buildings could be removed from the permanent right-of-way, an area of land completely surrounding both the house and shed was included in the total land to be appropriated, and such area was referred to in the complaint as "temporary" right-of-way.

At the hearing on the petition for injunction one of the appraisers testified that in arriving at the award made in the appraisers' report, damages were allowed for the "shed and house" and other buildings "on the back" which could be removed with a tractor.

The record here clearly, and without conflict, discloses that the State of Indiana has fully complied with the provisions of the statute for exercising the right of eminent domain. Appellee seeks to prevent the exercise of that right by the extraordinary remedy of injunction. The statute[1] gives her an adequate remedy at law. Having such remedy she cannot invoke injunctive relief and thereby nullify the purpose and effect of the

1. Acts 1905, ch. 48, §5, p. 59, being §3-1705, Burns' 1946 Replacement.

Eminent Domain Statute. *Heugel* v. *Townsley* (1938), 213 Ind. 339, 341, 12 N. E. 2d 761; *Livingston* v. *Livingston* (1921), 190 Ind. 223, 230, 130 N. E. 122; *Shedd* v. *Northern Ind. Pub. Serv. Co.* (1934), 98 Ind. App. 42, 182 N. E. 278;[2] *Halstead* v. *City of Brazil* (1925), 83 Ind. App. 53, 57, 147 N. E. 629.

Appellee's remedy here is provided by Acts 1905, ch. 48, §8, p. 59, being §3-1707, Burns' 1946 Replacement. She has properly filed exceptions to the appraisers' report, and after trial and judgment on the issues raised by such exceptions she may appeal to the Supreme Court of Indiana.[3] Acts 1925, ch. 201, §1, p. 487, being §4-214, Burns' 1946 Replacement; *Boyd* v. *Logansport, etc., Traction Co.* (1904), 161 Ind. 587, 589, 69 N. E. 398; *Northern Ind. Pub. Serv. Co.* v. *Darling, et al.* (1958), 128 Ind. App. 456, 458, 149 N. E. 2d 702.

The majority opinion attempts to justify the extraordinary remedy of injunction herein by taking out of context certain language found in §3-1707, *supra,* and enlarging the scope of the section to include injunctive relief such as is here requested.

Section 3-1707, *supra,* provides:

> "Any party to such action aggrieved by the assessment of benefits or damages may file written exceptions thereto in the office of the clerk of such court in vacation, or in open court if in session, within ten [10] days after the filing of such report,

2. For the appeal of this case see: *Shedd* v. *Northern Ind. Pub. Serv. Co.* (1934), 206 Ind. 35, 188 N. E. 322, 90 A. L. R. 1020. For an attempted injunction in the Federal Courts see: *Shedd* v. *State Line Generating Co.* (N. D. Ind. 1929), 34 F. 2d 287, 289; *Shedd* v. *State Line Generating Co.,* 7 Cir. (1930), 41 F. 2d 505 (Cert. denied, 282 U. S. 884, 75 L. Ed. 780, 51 S. Ct. 87).

3. The provision for appeal to the Appellate or the Supreme Court as provided by §3-1707, Burns' 1946 Replacement, was limited to the Supreme Court by Acts 1907, ch. 148, §1, p. 237, which amended Acts 1901, ch. 247, §9, p. 565, being now §4-214, Burns' 1946 Replacement.

and the cause shall further proceed to issue, trial and judgment as in civil actions; *the court may make such further orders, and render such finding and judgment as may seem just.* Such judgment as to benefits or damages shall be appealable by either party as in civil actions to the . . . Supreme Court." (Emphasis supplied.)

The clause upon which the majority opinion relies, "the court may make such further orders, and render such finding and judgment as may seem just" pertains solely to the subject-matter covered by the section, i.e., matters pertaining to the assessment of benefits or damages. Certainly the Legislature never intended by the use of the language in this clause to authorize a court to issue an injunction nullifying an order of condemnation rendered under proceedings regularly instituted and prosecuted under the provisions of the Eminent Domain Statute. This section authorizes the court to make further orders in the original condemnation action to provide for full compensation to the property owner arising because of extensions, additions, and capital expenditures, made after the condemnation proceeding has been instituted. *Public Service Co.* v. *City of Lebanon* (1943), 221 Ind. 78, 86-88, 46 N. E. 2d 480.

In my judgment an injunction will not lie for the purpose for which appellee has attempted to invoke injunctive relief in this case.

*Second:* The question of the uncertainty of the location of the line between that portion of the right-of-way designated as permanent and that designated as temporary was not raised in the trial court and is not presented here. Neither is any question properly presented for our consideration concerning the use which the State intends to make of the land taken for tempo-

rary right-of-way. This court has no authority to consider questions not raised in the trial court and properly presented here.

*Third:* Acts 1933, ch. 18, §18, p. 67, being §36-118, Burns' 1949 Replacement, provides, in part here relevant, as follows:

> "The state highway commission is hereby given the right, in the name of the state of Indiana, to purchase, or by voluntary grants and donations receive or otherwise acquire, lands and *rights necessary* for the construction, repair and maintenance of any state highway, and necessary for the relocating, widening or straightening of any state highway, or necessary for the clearing and removing of obstructions to the vision at highway crossings and curves, or for any other purpose or use contemplated by this act. The state highway commission is hereby endowed with the right of eminent domain in so far as the same may be necessary or proper for the carrying out of the provisions of this act." (Emphasis supplied.)

Under the above statute the State may acquire such rights or title as are necessary to carry out the purposes authorized in the Act.[4] 11 I. L. E., Eminent Domain, §151, p. 730; 11 I. L. E., Eminent Domain, §10, p. 571.

While I recognize that the State can appropriate only such rights in lands as are clearly within the limits of the authority granted by the statute,[5] I believe that the statute here is broad enough to permit the taking for temporary use, if such use is reasonably necessary to carry out the purposes for which the permanent taking of land or property is authorized. *Cleveland, etc., R. Co.* v. *Smith* (1912), 177 Ind. 524, 540, 97 N. E.

---

4. Acts 1933, ch. 18, §18, p. 67, being §36-118, Burns' 1949 Replacement.

5. 1 Nichols on Eminent Domain, §3.213(1), p. 229.

164; *Northeastern Gas Transmission Co.* v. *Collins* (1952), 138 Conn. 582, 87 A. 2d 139, 145; *Brady* v. *Road Directors for Allegany County* (1925), 148 Md. 493, 129 Atl. 682, 687; *Hepburn* v. *Jersey City* (1901), 67 N. J. L. 114, 50 Atl. 598, 599 (affirmed, 67 N. J. L. 686, 52 Atl. 1132); *Weitzner* v. *Stichman et al.* (1947), 296 N. Y. 907, 72 N. E. 2d 625.

In my judgment the taking of that part of appellee's land designated as temporary right-of-way was, under the record here, necessary to the construction and establishment of the proposed highway.

I would reverse the judgment of the trial court.

NOTE.—Reported in 173 N. E. 2d 652.