Brian E. CATT, Appellant–Plaintiff,

v.

BOARD OF COMMISSIONERS OF KNOX COUNTY, Appellee–Defendant.

No. 42A01–9911–CV–396.

Court of Appeals of Indiana.

Oct. 16, 2000.

Stephen L. Williams, Mann Law Firm ,Terre Haute, Indiana, Attorney for Appellant.

H. Linwood Shannon, III, Fine & Hatfield, Evansville, Indiana, Attorney for Appellee.

**OPINION**

ROBB, Judge

Brian Catt appeals the trial court's grant of summary judgment in favor of the Board of Commissioners of Knox County ("Knox County"). We reverse.

*Issues*

Catt raises the following expanded and restated issues for our review:

1. Whether Knox County was entitled to summary judgment because the governmental entity was immune from suit pursuant to Indiana Code section 34–13–3–3;

2. Whether Knox County was entitled to summary judgment because Catt was contributorily negligent; and

3. Whether Knox County was entitled to summary judgment because the governmental entity did not owe Catt a duty of care to maintain the public thoroughfare in a safe condition for travel.

*Facts and Procedural History*

The facts most favorable to the non-movant reveal that during the early morning of May 18, 1995, an abnormally heavy rainstorm occurred in Harrison Township, Knox County, Indiana. As a result of the heavy rainfall, there was severe flooding throughout Knox County and a number of culverts were washed away. One of these culverts was located on County Road 200 East.

That morning, Catt, a high school student, left his house to take a shower at his

aunt's house before going to school. To get to his aunt's house, Catt utilized County Road 200 East. On route to his aunt's house, Catt crossed a bridge and traveled up a hill. As he drove down the hill, his car slid on mud into a ditch where a culvert had existed before it had been washed away by the heavy rainfall.[1] A twelve-foot gap existed in the road where the culvert had previously existed. As a result of the accident, Catt was injured.

On November 18, 1996, Catt filed a complaint against Knox County alleging that he was injured due to Knox County's negligence. On June 24, 1999, Knox County filed a motion for summary judgment claiming that it was statutorily immune under the Indiana Tort Claims Act from Catt's claims of negligence. Following a hearing, the trial court granted summary judgment in favor of Knox County.[2] This appeal ensued.

### Discussion and Decision

#### I. Standard of Review of Summary Judgment

We employ the same standard used by the trial court when reviewing the grant or denial of summary judgment. *Dague v. Fort Wayne Newspapers, Inc.,* 647 N.E.2d 1138, 1139 (Ind.Ct.App.1995), *trans. denied.* "Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 1139–40 (citing Ind. Trial Rule 56(C)). Although our analysis proceeds from the premise that summary judgment is rarely appropriate in negligence actions, "a defendant is entitled to judgment as a

matter of law when the undisputed material facts negate at least one element of the plaintiff's claims." *Colen v. Pride Vending Serv.,* 654 N.E.2d 1159, 1162 (Ind.Ct.App. 1995), *trans. denied.* A trial court's grant of summary judgment is "clothed with a presumption of validity" on appeal, and the appellants bear the burden of demonstrating that the trial court erred. *Id.* Nevertheless, we must carefully scrutinize the trial court's decision to ensure that Catt was not improperly denied his day in court. *See id.*

Therefore, on appeal, we must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Shuamber v. Henderson,* 579 N.E.2d 452, 454 (Ind.1991). A fact is material if it facilitates the resolution of any of the issues involved. *State Street Duffy's, Inc. v. Loyd,* 623 N.E.2d 1099, 1100 (Ind.Ct.App. 1993), *trans. denied.* Any doubt as to a fact, or an inference to be drawn, is resolved in favor of the non-moving party. *Malachowski v. Bank One, Indianapolis,* 590 N.E.2d 559, 562 (Ind.1992).

#### II. Statutory Immunity

Catt first contends that the trial court erred in granting summary judgment in favor of Knox County because the governmental entity was not entitled to immunity under Indiana Code section 34–13–3–3. We agree.

Knox County argued in part before the trial court that it was entitled to summary judgment because Catt's "allegations of negligence are irrelevant, since Knox County is statutorily immune from [Catt's] claims of negligent acts." R. 181.

---

1. A culvert is a "sewer or drain crossing under a road or embankment." THE AMERICAN HERITAGE DICTIONARY, 322 (1981).

2. We note that the trial court did not enter specific findings of fact and conclusions of law to support its order granting summary judgment in favor of Knox County. Specific findings and conclusions are neither required nor prohibited in the summary judgment context. *Althaus v. Evansville Courier Co.,* 615 N.E.2d 441, 444 (Ind.Ct.App.1993). Moreover, neither Knox County nor Catt requested specific findings of fact and conclusions of law pursuant to Trial Rule 52(A). Thus, the trial court was not required to enter specific findings of fact and conclusions of law.

Governmental immunity from suit is regulated by Indiana Code sections 34–13–1–1 through 34–13–6–7 (the "Act"). Pursuant to the Act, governmental entities are subject to liability for torts committed by their agencies or employees unless one of the immunity provisions of the Act applies. *Scott v. City of Seymour*, 659 N.E.2d 585, 588 (Ind.Ct.App.1995). The entity seeking immunity bears the burden of proving that its conduct falls within one of the exceptions set out in the Act. *Id.* Because the Act is in derogation of the common law, it is narrowly construed against the grant of immunity. *Jacobs v. Board of Comm'rs of Morgan County*, 652 N.E.2d 94, 98 (Ind. Ct.App.1995), *trans. denied.* Whether a governmental entity is immune from liability is a question of law for the courts, although it may include an extended factual development. *Peavler v. Board of Comm'rs of Monroe County*, 528 N.E.2d 40, 46 (Ind.1988). The relevant immunity provision in the Act provides in pertinent part that:

A government entity or an employee acting within the scope of the employee's employment is not liable if a loss results from: . . . the temporary condition of a public thoroughfare that results from weather.

Ind.Code § 34–13–3–3.

■ It is well-settled law in Indiana that governmental entities are immune for losses resulting from roads rendered temporarily hazardous by inclement weather. *Leinbach v. State*, 587 N.E.2d 733, 736 (Ind.Ct.App.1992). However, a governmental entity is not entitled to immunity every time an accident occurs during bad weather. *Board of Comm'rs of Steuben County v. Angulo*, 655 N.E.2d 512, 513 (Ind.Ct.App.1995). Rather, in determining whether a governmental entity is immune under Indiana Code section 34–13–3–3, the

relevant inquiry is whether the loss suffered by the plaintiffs was actually a result of the weather or some other factor. *Angulo*, 655 N.E.2d at 513.

■ We believe that a determination of whether Knox County is entitled to statutory sovereign immunity requires an examination of the term "temporary" as contained in the text of Indiana Code section 34–13–3–3. We must construe the statute according to its plain meaning, and words and phrases shall be taken in their plain, ordinary and usual sense unless a different purpose is manifested by the statute itself. *Department of Pub. Welfare, State of Indiana v. Couch*, 605 N.E.2d 165, 167 (Ind.1992). The Indiana Supreme Court has defined "temporary" as "the opposite of permanent." *State v. Curtis*, 241 Ind. 507, 173 N.E.2d 652 (1961). This court later clarified the definition of "temporary," stating that the term is not so broad as to include everything that is "not permanent." *Van Bree v. Harrison County*, 584 N.E.2d 1114, 1117 (Ind.Ct.App.1992), *trans. denied.* We believe that a determination of whether a condition is "temporary" as set forth in Indiana Code section 34–13–3–3 hinges on the unique factual circumstances of a case; a "bright line test" is inapplicable for purposes of this analysis.

For example, inclement weather, such as heavy rainfall, may temporarily cause a roadway or bridge to be dangerous or impassable for motorists because of flooding. However, if this condition is due to poor inspection, design, or maintenance of the thoroughfare then the condition of the thoroughfare could be considered "permanent" under Indiana Code section 34–13–3–3. Therefore, in considering whether the condition is "temporary" or "permanent,"[3] the fact finder should look to prior

---

3. In the present case, we have framed the issue as whether the condition is "permanent" and not "temporary," and thereby leave for another day the question of whether a condition is caused by weather or the failure to adequately inspect, design, or maintain the public thoroughfare. However, any such future issue may be guided by the following analysis: If a particular condition or state of the public thoroughfare is present but only unveiled during inclement weather, it could be said that the weather is "temporary" but

occurrences of a similar nature along with the frequency of these occurrences and the resulting damage to the roadway from these occurrences.

Here, in support of its motion for summary judgment, Knox County designated the affidavit of Harry Manning, Superintendent of the Knox County Highway Department, which established in part that a five-foot culvert existed where the accident occurred, but was replaced with a six-foot culvert in 1993 when the smaller culvert washed out because of flooding as a result of heavy rainfall. R. 202. In addition, Knox County designated the affidavit of Angie Thompson, a research technician with Southwest Purdue Ag Center, which established in part that heavy rainfall occurred in the area where the subject culvert was located on or around the date of the accident.[4] R. 198–99. Knox County also designated the deposition of John Schwartze, which provided that the culvert had previously washed out approximately one or two years before Catt's accident on May 18, 1995. R. 150. Knox County designated all of this evidence to support its argument that "the washed-out culvert was a temporary condition" because "there is no evidence that the culvert would not have been fixed and repaired by Knox County." R. 186.

We believe that Knox County's designations of evidence actually support Catt's contention that the trial court erred in granting summary judgment in favor of Knox County. The evidence creates an inference that the accident was a result of a "permanent" condition instead of a "temporary" one. Materials designated by Catt establish that the culvert had washed out at least twice prior to May 18, 1995, the date of Catt's accident. In addition, Knox County installed the larger culvert just two years prior to Catt's accident because the previous one was of an inadequate design to accommodate flooding from a heavy rainfall. Looking to the evidence most favorable to Catt, the nonmoving party, an inference arises that the culvert is still inadequate and that the problem of heavy rainfall washing out the culvert will continue until a culvert of sufficient size to handle a high volume of water is installed by Knox County.[5]

In opposition to Knox County's motion for summary judgment, Catt designated the affidavit of Diane Schwartze, who lives in close proximity to the subject culvert, which provided that the bridge washed out in November of 1993, and that "I know the bridge has washed out 2 times." R. 263. In addition, Catt designated the affidavit of his aunt, Marilyn K. Lane, who resided near the subject culvert, which established that she and her husband had lived in the area since 1972 and that the "bridge and culvert had washed out many times during the time period since 1972." R. 266.

In Indiana, the party moving for summary judgment has the burden of establishing that no genuine issue of material fact exists. *Schmidt v. American Trailer Court, Inc.*, 721 N.E.2d 1251, 1253 (Ind.Ct.

the state or condition of the thoroughfare is "permanent." If this is the situation and the type of weather manifesting the condition is foreseeable then the immunity provision would have no application and the focus would be on whether the condition was due to the poor design, construction, or maintenance of the public thoroughfare. An example of this, albeit in another context but which is illustrative, is the proverbial roof which leaks only when it rains.

4. The records from the Southwest Purdue Ag Center located in Vincennes, Indiana indicate that 2.28 inches of rain/precipitation fell in the Vincennes, Indiana area on May 17, 1995,

and that 3.68 inches of rain/precipitation fell in Vincennes, Indiana on May 18, 1995. R. 200.

5. Although other culverts besides that at the site of Catt's accident were washed out because of flooding due to the heavy rainfall, we do not believe this supports Knox County's contention that the condition was "temporary" because of the inclement weather. It is entirely possible that other culverts were washed out because they, too, were inadequately inspected, designed, or maintained by the governmental entity.

App.1999), *trans. denied.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The designated materials suggest that a physical structure, the culvert, was irretrievably washed away by rainfall that was neither infrequent nor a "supernatural act of God." Moreover, the materials raise the inference that the condition was a result of Knox County's failure to adequately inspect, maintain, or design the culvert because the culvert continued to wash away. Although the designated materials concerning the physical condition of the culvert/bridge are not overwhelming, we believe that it is sufficient to withstand Knox County's contention that the sole proximate cause of Catt's injuries was the "temporary" condition of the culvert caused by the heavy rainfall and resultant flooding. Because Knox County has failed to satisfy its burden of proof that no genuine issue of material fact exists, we believe the trial court erred in granting summary judgment in favor of Knox County.

### III. Contributory Negligence

■ Catt contends that the trial court erred in granting summary judgment in favor of Knox County because disputed issues of material fact exist as to whether or not he was contributorily negligent. We agree.

■ Tort claims against governmental entities such as Knox County are subject to common law principles of negligence because Indiana's Comparative Fault Act does not apply to such entities. Ind.Code § 34–51–2–2; *Hapner v. State,* 699 N.E.2d 1200, 1205 (Ind.Ct.App.1998). Under such common law principles, any contributory negligence on Catt's part, however slight, will bar his claim against Knox County provided that his negligence proximately contributed to his injuries. *See Sauders v. County of Steuben,* 693 N.E.2d 16, 18 (Ind.1998). The plaintiff's contributory negligence will bar all recovery regardless of any negligence on the

defendant's part. *Id.* Contributory negligence is an affirmative defense, and as such, the burden of proving it fell on Knox County. *See Board of Comm'rs of Adams County v. Price,* 587 N.E.2d 1326, 1333 (Ind.Ct.App.1992), *trans. denied.* Moreover, the existence of contributory negligence is usually a question of fact for the jury unless the facts are undisputed and only a single inference can be drawn therefrom. *Nesvig v. Town of Porter,* 668 N.E.2d 1276, 1281 (Ind.Ct.App.1996). We have previously enunciated the legal principles comprising the doctrine of contributory negligence in Indiana:

> Contributory negligence is conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, which falls below the standard to which he is required to conform for his own protection. A plaintiff must exercise the degree of care which an ordinary reasonable person would exercise in like or similar circumstances. In addition, the plaintiff's negligence must either be the proximate cause of the injury or proximately contribute thereto. Since the question of contributory negligence does not arise except in a case where it has been shown that the defendant was guilty of negligence which was the proximate cause of injury, a plaintiff's negligence need not be the sole proximate cause of the injury.

*Peavler v. Board of Comm'rs of Monroe County,* 557 N.E.2d 1077, 1080 (Ind.Ct. App.1990).

In the present case, Catt designated the affidavit of Lane, the deposition of Schwartze, and his response to Knox County's interrogatory number 27 in opposition to Knox County's motion for summary judgment, evidence which indicates that Catt operated his vehicle in a reasonably safe manner prior to the accident. Because we believe that Catt's designations of evidence raise genuine issues of material fact regarding whether Catt was contributorily negligent, we hold that Knox County was not entitled to summary judg-

ment on the basis of contributory negligence.

## IV. Duty of Care

 Catt also contends that the trial court erred in granting summary judgment in favor of Knox County because the governmental entity owed him a duty of care to maintain the public thoroughfare in a safe condition for travel. We agree.

 To sustain an action for negligence, Catt must establish: (1) a duty owed by the defendant to conform its conduct to a standard of care arising from its relationship with the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by the breach of that duty. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991). The first of these three elements, the existence of a duty, is a question of law for the court to determine. *Gariup Constr. Co. v. Foster*, 519 N.E.2d 1224, 1227 (Ind.1988). Recently the Indiana Supreme Court rejected the private duty/public dichotomy, which looked to whether "the duty alleged to have been breached was a 'private one' or a 'public one,'" stating that a governmental entity is bound by the same duty of care as a private individual, except in a few limited circumstances not applicable here. *Benton v. City of Oakland City, Indiana*, 721 N.E.2d 224, 230 (Ind.1999). Thus, governmental entities are currently bound by this duty to use reasonable care under

the circumstances, directly and derivatively, under a theory of respondeat superior. *St. John Town Bd. v. Lambert*, 725 N.E.2d 507, 513 (Ind.Ct.App.2000).

 We believe that Knox County owed a duty of reasonable care under the circumstances to Catt to keep the public thoroughfare in a safe condition. Indiana appellate courts have long recognized a general duty on the part of the state, counties, and municipalities to exercise reasonable care in the design, construction, maintenance, and repair of the roads and highways within their control. *Miller v. Indiana State Highway Dep't*, 507 N.E.2d 1009, 1012 (Ind.Ct.App.1987). The governmental unit will be held to that standard of care which would be exercised by an ordinary prudent person under the circumstances. *State v. Magnuson*, 488 N.E.2d 743, 747 (Ind.Ct.App.1986), *trans. denied*. This general duty of care arises when the governmental unit has either actual or constructive knowledge of an unsafe condition. *Miller*, 507 N.E.2d at 1012.

 In the present case, the accident occurred on County Road 200 East in Harrison Township, Knox County, Indiana.[6] Designated materials raise an inference that Knox County had at least constructive knowledge that the culvert had washed away.[7] Thus, we believe that Knox Coun-

---

**6.** We note that the record lacks any evidence that Knox County formally dedicated County Road 200 East as a public street. However, we have previously held that a street was owned by the city due to its implied acceptance of the road by years of public use. *City of Hammond v. Maher*, 30 Ind.App. 286, 65 N.E. 1055 (1903). The record reveals that the thoroughfare had been utilized by the general public for many years. Thus, we will assume that County Road 200 East was a dedicated public street.

**7.** Knox County's designated materials establish that the culvert had washed away previously because of flooding. R. 202, 150. In addition, Catt's designated materials also establish that the culvert has washed away because of flooding. R. 263, 266. Harry Manning, the Superintendent of the Knox County

Highway Department, stated in his affidavit that:

> Early on the morning of May 18, 1995, the Knox County Area received an abnormally large amount of precipitation in the form of rain. Resulting from this rain, the culvert in question washed away and left a ten to twelve foot gap in the road. Also, during this time period, there was severe flooding throughout Knox County. The Knox County highway workers were busy that morning attempting to save a bridge near Vincennes, Indiana. A number of other culverts throughout Knox County had washed-out due to the severe rain and resulting flooding.

R. 202. Thus, it is apparent that Knox County was aware that flooding had damaged other public thoroughfares, and with the knowledge that the subject culvert had washed away previously, we believe that

ty was not entitled to summary judgment on the basis that the governmental unit did not owe Catt a duty of reasonable care to maintain the public thoroughfare in a safe condition for travel. Genuine issues of material fact remain with respect to whether Knox County was negligent in its inspection, design, or maintenance of the public thoroughfare.

### Conclusion

Based on the foregoing, we hold that the trial court erred in granting summary judgment in favor of Knox County.

Reversed.

BAILEY, J., concurs.

SHARPNACK, C.J., dissents with opinion.

SHARPNACK, C.J., dissenting

I respectfully dissent. The statute providing immunity, Ind.Code § 31–13–3–3, is plain enough:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:

* * * * *

> (3) the temporary condition of a public thoroughfare that results from weather.

I.C. § 31–13–3–3(3). This statute protects the governmental entity where it would otherwise be liable by reason of its negligence. *Leinbach v. State*, 587 N.E.2d 733, 736 (Ind.Ct.App.1992).

There is no real question here that the absence of the culvert was due to the heavy rain, which is a temporary condition "that results from the weather." I.C. § 31–13–3–3(3). Negligence of the county in designing the culvert, if any, would not be relevant because the absence of the culvert was clearly temporary at the time of the accident. *See Leinbach v. State*, 587 N.E.2d at 736. Something "temporary" that occurs more than once, or often for that matter, is still temporary and not permanent. I respectfully dissent and would affirm the grant of summary judgment in favor of Knox County.

Knox County had constructive knowledge of the washed out culvert that resulted in Catt's accident.